**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

FRED A. NORMAN, et al.,

      Plaintiffs,

v.

SUPERIOR CREDIT UNION, INC.,
f/k/a CINCO CREDIT UNION, et al.,

      Defendants.

Case No. 1:19-cv-250

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

On April 5, 2019, Plaintiffs Fred A. Norman and Lydia Norman, proceeding pro se, paid the requisite filing fee and initiated this civil case against Superior Credit Union, Inc. formerly known as Cinco Credit Union, and three of its employees: Tom Hopper, Jim Zahneis, and Perry Lunhe.[1] Pursuant to local practice, this case has been referred to the undersigned magistrate judge. *See generally* 28 U.S.C. § 636(b).

Defendants have filed a motion for summary judgment. Plaintiffs have responded, and Defendants have filed a reply. For the reasons that follow, the undersigned now recommends that Defendants' motion be GRANTED and that this case be DISMISSED.

---

[1] Defendants assert that Plaintiffs have failed to correctly name/identify and/or serve the correct entities. (Doc. 9 at 2, n. 1). For that reason, Defendants explain that their joint motion for summary judgment has been filed without waiving any individual Defendant's objections to proper identification and service.

**I.     Allegations of Complaint**

Because the undersigned concludes that this Court is without jurisdiction over this case, it is appropriate to begin with a review of Plaintiffs' claims. The entirety of the complaint sets forth those claims as follows:

1. Cinco et al employees Tom Hopper and Jim Zahneis perpetrated the acts of theft and misappropriation of plaintiffs Savings and Primary Share and Mortgage accounts from 1976-2018.

2. Cinco et al. employees Tom Hopper 1987-1999 and Jim Zahneis from 1998 until now, substantial amounts of money was taken and transferred out of the savings and mortgage accounts of Fred and Lydia Norman from 1987-2017.

3. Cinco et al employees from 1987-1999 Tom Hopper and from 1999-2017 Jim Zahneis, both used altered contracts, illegible and incomplete listing of payments and money, also changing book series numbers that were different from the original loan.

4. Cinco et al Tom Hopper from 1987-1999 and irregularities on the ledger to remove or use significant amounts of money from the savings, primary share account and mortgage of Fred and Lydia Norman, which they never had the opportunity to receive any payments or dividends from their shares which Cinco has taken and hid.

5. Cinco et al employee Jim Zahneis from 1999-2018, purposefully used outdated and purported contracts, false statements while using wire transfers from out of the savings account and primary shares from the accounts of Fred and Lydia Norman.  While using illegal interest rates that doesn't follow federal rules and regulations, this has continued for over 20 plus years.  Now when it comes to Superior Credit Union, suspicions grow with them.  Although they are now the new Cinco, the savings and primary shares are being used and taken again.  Until this day, the Normans still have not received a check or any dividends.

6. Now the same pattern continues with Superior and once again, Fred and Lydia Norman are restricted from all access to their accounts including the primary shares.  The same vile business practices are being used against the Normans.

7. Substantial amounts of money have been taken and paid to these financial institutions.  This situation needs to be investigated and tried.

Immediately below the above typed paragraphs in the complaint is the following handwritten statement:

> Perry Lunke from 10-17-2017 [to] 4-1-2019
> Large payments of money taken from Norman Fred & Lydia accounts primary and savings from 10-17-2017 – 4-1-19[.]   The loan was made in 1987 for the amount of 38,300.00 and still not satisfied 32 years latter [sic]
> Fred & Lydia disagree.  These credit unions have unclean hands.

(Doc. 1-1 at 4).  In an answer filed on May 6, 2019, Defendants assert multiple defenses, including the defense that this Court lacks subject matter jurisdiction. (Doc. 3).

Defendants' jurisdictional challenge is reiterated in their pending motion for summary judgment.  The motion additionally (and alternatively) raises the defenses of res judicata and collateral estoppel.  (Doc. 9).  To the extent that this Court has jurisdiction, Defendants further argue that the Court should dismiss this case under the *Colorado River* abstention doctrine because the Plaintiffs are simultaneously litigating their claims in state court.  Although only <u>one</u> responsive memorandum is permitted under the Federal Rules of Civil Procedure, Plaintiffs have filed a multitude of documents in response to the Defendants' motion, nearly all of which are procedurally improper and have not been considered by the undersigned. (*See, e.g.*, Docs. 13, 14, 15, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33).  Even though the rules of civil procedure permit the filing of only one response, in the interests of justice the undersigned has considered a total of three memoranda filed by Plaintiffs in opposition to Defendants' motion. [2]  (*See* Docs. 14,

---

[2] In recognition of the liberal standards applicable to Plaintiffs' pro se documents, the undersigned has considered two memoranda filed on July 8, 2019 as a composite single "response" to the pending motion. *See, e.g.*, Plaintiffs' "Reply and Evidence Against [Defendants'] Motion for Summary Judgment," (Doc. 14), and "Plaintiffs['] Reply and Dispute of Tom Hopper's Memory and Objections for Cinco nka Superior's Motion for Summary Judgment." (Doc. 15).  The undersigned also has reviewed the Plaintiffs' "Supplemental Memorandum in Support of Opposition to Defendants' Motion for Summary Judgment," filed on August 9, 2019. (Doc. 18).  Considering the procedural impropriety of the multiple additional findings and that the Court expressly warned Plaintiffs to file any "supplement" to their prior response(s) not later than August 9, 2019, the undersigned declines to consider the additional improperly filed evidentiary

3

15, 18). The undersigned also has considered Defendants' reply memorandum. (Doc. 20).

## II.  This Case Should be Dismissed for Lack of Jurisdiction

Plaintiffs have the burden to prove that this Court possesses subject matter jurisdiction. On its face, Plaintiffs' complaint contains no reference to any basis for this Court's exercise of subject matter jurisdiction. Defendants argue that no jurisdiction exists; the undersigned agrees.

Pursuant to 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." A federal court has jurisdiction under § 1332 only if there is "complete diversity between all plaintiffs and all defendants." *Lincoln Prop.* Co. *v. Roche*, 546 U.S. 81, 89 (2005). "To establish diversity jurisdiction, one must plead the citizenship of the corporate and individual parties." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 n.20 (D.C. Cir. 1983); *see also Leys v. Lowe's Home Ctrs.*, Inc., 601 F.Supp.2d 908, 912–13 (W.D. Mich. 2009). Here, the complaint identifies both Plaintiffs and Defendants as residents of Ohio. In addition, the only allegation that identifies any amount in controversy refers to a loan balance of $38,300 – an amount that falls well below the threshold amount for the exercise of diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

Just as diversity jurisdiction appears to be lacking from the face of the complaint, so too is there an absence of any valid reference to federal question jurisdiction in the complaint. The sole reference to federal law is a single allegation that the interest rate

---

exhibits, memoranda, and assorted documents.

4

being applied to Plaintiffs' loan is an "illegal interest rate[] that doesn't follow federal rules and regulations." However, Plaintiffs cite to no particular federal law, rule or regulation that would support a federal cause of action. A cursory and vague reference to unspecified "federal rules and regulations" is insufficient to invoke federal question jurisdiction. *See also*, *generally*, *Apple v. Glenn,* 183 F.3d 477, 479 (6th Cir. 1999) (affirming a trial court's authority to *sua sponte* dismiss a non-prisoner *pro se* complaint for lack of jurisdiction "at any time" where the filing fee has been made, "when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open for discussion.").

In the body of Plaintiffs' responses in opposition to summary judgment, Plaintiffs briefly refer by title to several federal laws, including the Equal Credit Opportunity Act, the Truth in Lending Act, the Fair Credit Reporting Act, and the Real Estate Settlement Procedures Act, as well as one federal agency (FEMA). (Docs. 14, 15). Again, however, a cursory reference to federal law - without identifying any specific cause of action - is insufficient to carry Plaintiffs' burden to show that jurisdiction exists.

**III.    The Complaint also is Barred by Collateral Estoppel and Res Judicata**

Although Plaintiffs' factual allegations are few, they refer to "theft and misappropriation of plaintiffs Savings and Primary Share and Mortgage accounts" by Defendants, beginning sometime in 1976 and continuing through to the present time. Defendants' motion for summary judgment asks this Court to take judicial notice of the fact that over the past fifteen years, Plaintiffs have repeatedly litigated the same or closely related grievances concerning their mortgage account(s) in multiple judicial forums, including twice in bankruptcy court and once in state court. Defendants identify three

5

cases in which Plaintiffs have litigated the same claims. Plaintiffs failed to file any timely response in opposition to the Defendants' Proposed Undisputed Facts, (Doc. 8), which appear to be well-supported by evidence of record and are accepted by this Court.[3]

The doctrines of collateral estoppel and res judicata, otherwise known as issue preclusion and claim preclusion, preclude Plaintiffs from relitigating the same issues in this Court that they previously litigated other judicial forums. Relevant prior final decisions include a 2004 Bankruptcy Court order (Plaintiffs' Bankruptcy Chapter 13 Plan Confirmation Order) and the same court's August 3, 2018 Order (Overruling the Debtors' Objection to Claim and Dismissal of the Bankruptcy). Plaintiffs also have litigated, and continue to litigate, the same issues in state court. In Plaintiffs' supplemental memorandum in opposition to summary judgment, Plaintiffs confirm that they are seeking a new determination of the same issues, based on their belief that the state and bankruptcy courts "made the wrong decisions." (Doc. 18, PageID 387). However, Plaintiffs offer no legal basis that would support this Court's rejection of issue preclusion and claim preclusion, both of which operate to bar the instant lawsuit.

Plaintiffs first challenged the underlying mortgage on which the instant case is based in the course of a 2004 bankruptcy proceeding. *See, e.g., In re Norman*, Case No. 1:04-BK-19054 (S.D. Bankr. Ohio) (establishing Plaintiffs' obligations on their loan including the principal amount due as of February 23, 2005 and "on ongoing interest rate

---

[3]Defendants filed their Proposed Undisputed Facts in support of their motion for summary judgment in accordance with the undersigned's standing order. (Doc. 8). The proposed facts are well-supported by evidentiary exhibits, nearly all of which are public records filed in other courts that can be judicially noticed by this Court. (*See generally* Docs. 5-6). Plaintiffs filed no timely response that identifies by page or paragraph number or otherwise objects to any specifically enumerated fact. In a "supplemental memorandum" filed on August 9, 2019, Plaintiffs' sole opposition to the proposed facts is a statement that other courts "both…made the wrong decisions." (Doc. 18, PageID 387). Even if the multiple procedurally improper documents filed by Plaintiffs after August 9, 2019 were considered, none of those documents provide a clear or cogent response to the Proposed Findings.

6

on the mortgage." (Doc. 8-1 at ¶¶4-5, citing Doc. 5-1, PageID 17 and Doc. 5-2, PageID 22).

Plaintiffs next litigated the same issues in defense of a state court foreclosure proceeding initiated by the Credit Union after the Plaintiffs defaulted on their repayment obligations. (Doc. 8-1 at ¶¶ 6-7, citing Hamilton County Court of Common Pleas Case No. A 1404308 and Doc. 5-4, PageID 35-53). The Normans are represented by counsel in that state court action, which remains ongoing. Through counsel, the Normans asserted several defenses including arguments that the Credit Union failed to properly service the loan, that the Credit Union had assessed "fees, costs, and charges" that were not authorized by the terms of the mortgage, and that the Credit Union "wrongfully added and continues to unilaterally add…improper charges to the balance…." (Doc. 8-1 at ¶7). In state court, the Normans also maintained that the Credit Union "failed to properly credit and apply payments" to their account. (Doc. 8-1 at ¶7, quoting Doc. 5-5, PageID 55).

A state court magistrate ruled in favor of the Credit Union on summary judgment in the foreclosure action on July 29, 2015. (Doc. 8-1 at ¶8 citing Doc. 5-7, PageID 89-93). Before the magistrate's ruling became final, Plaintiffs initiated another bankruptcy case to again challenge their home mortgage debt, including the balance due, interest rate, and the Credit Union's administration of their account. (Doc. 8-1 at ¶¶9-10; Doc. 5-8, PageID 94). State court proceedings were stayed in light of the filing of a new bankruptcy case.

With respect to the Plaintiffs' most recent bankruptcy case,[4] U.S. Bankruptcy Judge Jeffery Hopkins confirmed on August 3, 2018 - after conducting a two-day

---

[4] Judge Hopkins noted that the Normans are "serial filers" who have filed four bankruptcy petitions within the past fifteen years. (Doc. 5-2, PageID 20).

evidentiary hearing in April 2018 - that res judicata from the 2004 bankruptcy case precluded relitigation of the principal amount of Plaintiffs' mortgage debt and the applicable interest rate.  In a prior order dated October 2, 2017, the bankruptcy court similarly held that the Normans "cannot now complain that the amount and validity of the claim established [in the 2004 bankruptcy case] was unlawful."  (Doc. 8-1 at 14, citing Doc. 5-12, PageID 154).  Nevertheless, the Normans continued to seek alteration or amendment of the bankruptcy court's ruling.  (Doc. 8-1 at ¶15, citing Doc. 5-2, PageID 21).

Judge Hopkins's August 2018 order explained that he had conducted the extensive hearing in April "for the exclusive and explicit purpose of allowing the Debtors to 'litigat[e] the amount owed to [the Credit Union] subsequent to the Debtors' 2004 confirmed plan.'" (Doc. 5-2, PageID 23).  Through counsel, however, the Normans insisted that "[t]he major issue…is what *interest rate* governs this payment stream."  (Doc. 8-1 at ¶17, citing Doc. 5-2, PageID 23, emphasis original).  "Instead of proffering new evidence demonstrating miscalculations or misapplied payments…, the Debtors continued their reliance upon the singular argument that their mortgage was subject to a variable interest rate despite never having raised this issue prior to the 2004 confirmation order when it would have been appropriate."  (Doc. 5-2 at PageID 24-25). Confirming their lack of challenge to the debt amount before the bankruptcy court, the Normans entered into stipulations that "necessarily include[d] agreement that the Debtors' payments were correctly applied by" the Credit Union.  (Doc. 5-2, PageID 24 at n.3).  Thus, Judge Hopkins held that the Normans had "failed to present evidence that any payments that were made after the 2004 confirmation order had been misapplied by [the Credit Union] or that [the Credit

8

Union] had somehow miscalculated the amount of the debt…." (*Id.*) The Bankruptcy Court also rejected the challenge to the interest rate, holding that the 2004 bankruptcy case established the applicable interest rate and operated as res judicata to preclude the Normans from relitigating that issue. (Doc. 8-1 at ¶17, citing Doc 5-2, PageID 22-24, 27-28, additional citations omitted). The Bankruptcy Court dismissed the Normans' case in November 2018. Importantly, the Normans filed no appeal.

Once the bankruptcy case was dismissed, proceedings resumed in state court. The magistrate's 2015 ruling on the Credit Union's motion for summary judgment in the state court case remains pending for review by the assigned Common Pleas Judge. As recently as May 2019, counsel for the Normans filed new Objections and a motion to vacate the magistrate's 2015 decision in state court.

### IV. The *Colorado River* Abstention Doctrine

As explained above, the undersigned concludes that this Court lacks jurisdiction and alternatively, that Plaintiffs' case is completely barred by issue preclusion and claim preclusion based on the prior and rulings of the Bankruptcy Court. Defendants further argue that this Court should dismiss this case under the *Colorado River* abstention doctrine. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The undersigned agrees but finds no need to discuss this doctrine in depth.

### V. Conclusion and Recommendation:

For the reasons stated, **IT IS RECOMMENDED THAT** Defendants' motion for summary judgment (Doc. 9) be **GRANTED** and that this case be **DISMISSED** for lack of jurisdiction. In the alternative, both issue preclusion and claim preclusion bar all of Plaintiffs' claims in this case. Last but not least, even if a reviewing court were to

9

determine (contrary to the undersigned) that jurisdiction exists and that Plaintiffs' claims are not completely foreclosed by their prior litigation, the undersigned still would recommend abstention in light of the ongoing state court proceedings.

                                                          *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

FRED A. NORMAN, et al.,

        Plaintiffs,

   v.

SUPERIOR CREDIT UNION, INC.,
f/k/a CINCO CREDIT UNION, et al.,

        Defendants.

Case No. 1:19-cv-250

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).